UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| - v. - | : | 17 Cr. 307 (DLC) |
| ANTHONY WEINER, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S SENTENCING MEMORANDUM

JOON H. KIM
Acting United States Attorney
Southern District of New York
Attorney for the United States of America

Amanda Kramer
Stephanie Lake
Assistant United States Attorneys
   - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | :    17 Cr. 307 (DLC) |
| ANTHONY WEINER, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in connection with the sentencing of Anthony Weiner, which is scheduled for September 25, 2017, following his guilty plea to transferring obscene material to a minor. Although the defendant's self-destructive path from United States Congressman to felon is indisputably sad, his crime is serious and his demonstrated need for deterrence is real. The non-custodial sentence that Weiner proposes is simply inadequate; his crime deserves time in prison. For the reasons set forth below, the Government respectfully requests that Court sentence Weiner to a term of imprisonment within the range of 21 to 27 months.

## BACKGROUND

### I. Offense Conduct

In the evening of January 23, 2016, a 15-year-old girl (the "Minor Victim") initiated contact with the defendant by sending him a direct message on Twitter. (PSR ¶ 6). Over the next several hours, the Minor Victim and Weiner exchanged a series of messages, ranging from the mundane to the provocative. Early in the exchange, the Minor Victim revealed to Weiner that she was in high school. (PSR ¶ 6). Despite knowing he was communicating with a high school student, Weiner participated in increasingly suggestive exchanges, telling the Minor Victim,

1

among other things, that he thought she was "kinda sorta gorgeous." (PSR ¶ 6). Their communications continued the next morning on Facebook messenger, then moved to Kik, and at some later point, Confide and Snapchat. The latter three all are messaging and photo-sharing applications that delete messages and images once viewed. (PSR ¶¶ 8-11).

As January turned to February, their intermittent exchanges grew more lascivious. This was despite the fact that there could be no reasonable doubt in Weiner's mind that he was chatting with a minor – in addition to having revealed that she was a high school student, (PSR ¶ 6), the Minor Victim told Weiner that she was getting her learner's permit, (PSR ¶ 9). She explained in Facebook chats that she has "parents that wouldn't approve of some of the things" she does, and that she likes "older guys," "[b]ut that's illegal." The defendant correctly observed, "You are young," in one Kik message.

Against that backdrop, between February 17 and 23, 2016, Weiner and the Minor Victim participated in three video chat sessions on Skype.[1] (PSR ¶ 12). It was then that the Minor Victim made clear that she was not just a minor – she was, in fact, only 15 years old. (PSR ¶ 12). That did not stop Weiner. During the latter two Skype sessions, on February 18 and 23, 2016, and in a Snapchat communication on March 9, 2016, the defendant used graphic and obscene language to ask the Minor Victim to display her naked body and touch herself, which she did. (PSR ¶¶ 10-12). He also sent an obscene message to the Minor Victim on Confide, describing

---

[1] There is no dispute that the Minor Victim repeatedly suggested that she and the defendant participate in video chats on Skype. (Def. Mem. at 17). Those suggestions were not, however, one-sided. For example, Twitter records reveal that during their first exchanges the night of January 23, 2016, at some point after the Minor Victim had suggested that they Skype, the defendant said "Leave the complex stuff for Skype." That night as well, after a suggestive exchange, the defendant said "Maybe Skype someday." Thus, although it was the Minor Victim who initially sought out Weiner, as the Government readily concedes, Weiner immediately responded to the Minor Victim's overture and willingly participated in the offense conduct thereafter.

2

what he would do to her, if she were 18. (PSR ¶ 10). Part and parcel of these disturbing – and criminal – exchanges, the defendant also sent the Minor Victim adult pornography. (PSR ¶ 13). In approximately March 2016, after several months of intermittent exchanges, communications between the defendant and Minor Victim largely stopped. The Minor Victim made efforts to re-engage, but was met with limited responsiveness. (PSR ¶ 14).

The instant conduct was revealed to the public and law enforcement in September 2016, when the *Daily Mail* published the Minor Victim's account of her communications with Weiner after she participated in a paid interview. (PSR ¶ 19).

## II.     The Defendant's Plea and Applicable Guidelines Range

On May 19, 2017, the defendant pleaded guilty, pursuant to a plea agreement with the Government, to a one-count Information, which charged him with transferring obscene material to a minor from in or about January through March 2016, in violation of Title 18, United States Code, Section 1470. (PSR ¶¶ 1, 3).

Under the terms of the plea agreement, and as calculated by the United States Probation Office (the "Probation Office"), the defendant's sentencing Guidelines are 120 months' imprisonment (the "Stipulated Guidelines Range"). (PSR ¶¶ 3, 93). The calculation yielding the Stipulated Guidelines Range begins with a base offense level of 10, pursuant to Section 2G3.1 of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). The following enhancements and cross-references then apply:

- Pursuant to U.S.S.G. § 2G3.1(b)(1)(E), because the offense involved distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, the base offense level was increased by seven levels. (PSR ¶¶ 3, 29).

- Pursuant to U.S.S.G. § 2G3.1(b)(3), because the offense involved the use of a computer or interactive computer service, the base offense level was increased by two levels. (PSR ¶¶ 3, 29).

3

- Pursuant to U.S.S.G. § 2G3.1(c), because the offense involved receiving and possessing material involving the sexual exploitation of a minor, U.S.S.G. § 2G2.2 applies. (PSR ¶¶ 3, 29).

- Pursuant to U.S.S.G. § 2G2.2(c), because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and for the purpose of transmitting a live visual depiction of such conduct, and because the offense level under U.S.S.G. § 2G2.1 is greater than the offense level under U.S.S.G. § 2G2.2, U.S.S.G. § 2G2.1 applies. (PSR ¶¶ 3, 29).

- Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is 32. (PSR ¶¶ 3, 29).

- Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), because the offense involved a minor who had attained the age of twelve years but not yet attained the age of sixteen years, the base offense level was increased by two levels. (PSR ¶¶ 3, 30).

- Pursuant to U.S.S.G. § 2G2.1(b)(6)(B)(i), because the offense involved the use of a computer or interactive computer service, the base offense level was increased by two levels. (PSR ¶¶ 3, 31).

The total offense level of 36 is then reduced by three levels because the defendant accepted responsibility for his crime and provided timely notice of his intention to plead guilty to the Government. (PSR ¶¶ 3, 35-38).

Because the defendant has no criminal history points, he is in Criminal History Category I. (PSR ¶¶ 3, 42). With an offense level of 33, the resulting Guidelines range would be 135 to 168 months' imprisonment, but for the statutory maximum of 120 months' imprisonment. (PSR ¶¶ 3, 93). Thus, the Stipulated Guidelines Range and the range calculated by the Probation Office is 120 months' imprisonment. (PSR ¶¶ 3, 93). The plea agreement also provides that in light of the specific circumstances of the offense conduct in this case and because the substantially-increased Guidelines range results from the cross-reference to other sections of the Guidelines, the Government agreed that a sentence within the range of 21 to 27 months' imprisonment (which would be the applicable Guidelines range without application of the cross-references) would be fair and appropriate under the specific circumstances of this case. (PSR

¶¶ 3, 94).  The Probation Office recommends a sentence of 27 months' imprisonment.  (PSR at 31, Sentencing Recommendation).

## DISCUSSION

### I. Applicable Law

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  District courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Id.* at 49.  After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, adequately deter criminal conduct, and promote respect for the law, the need to protect the public from further crimes of the defendant, and the need to provide the defendant with needed correctional treatment in the most effective manner.  *Id.* at 50 & n.6; *see also* 18 U.S.C. § 3553(a).

### II. A Sentence Within the Range of 21-27 Months is Warranted

The seriousness of the conduct and the need for deterrence warrant a custodial sentence within the range of 21 to 27 months' imprisonment.  Such a sentence would, in the Government's view, fully and fairly take into account the § 3553(a) factors.  Such a sentence – in the face of an otherwise applicable Guidelines range of 10 years – would also more than adequately account for mitigating considerations addressed in the defendant's sentencing submission filed on September 13, 2017 ("Def. Mem."), including the lack of evidence that the defendant attempted to meet the Minor Victim or to seek out other minors, and the fact that none

5

of his devices revealed that he had searched for, possessed, or exchanged child pornography. In consideration of many of those same factors, the Probation Office has recommended a sentence of 27 months' imprisonment. (PSR at 31, Sentencing Recommendation). Thus, the Government respectfully submits that a sentence within the range of 21 to 27 months' imprisonment fully accounts for any mitigating factors. Further reduction is not warranted.

### A. The Offense Is Serious

This is not merely a "sexting" case. (Def. Mem. at 37-43). The defendant did far more than exchange typed words on a lifeless cellphone screen with a faceless stranger. With full knowledge that he was communicating with a real 15-year-old girl, the defendant asked her to engage in sexually explicit conduct via Skype and Snapchat, where her body was on display, and where she was asked to sexually perform for him. (PSR ¶¶ 11, 12). That offense – transmitting obscenity to a minor to induce her to engage in sexually explicit conduct by video chat and photo – is far from mere "sexting." Weiner's criminal conduct was very serious, and the sentence imposed should reflect that seriousness.

The defendant claims that he "responded to the victim's request for sexually explicit messages not *because* she was a teenager, but in spite of it." (Def. Mem. at 2 (emphasis in original)). While the Government does not contend that Weiner engaged in inappropriate sexual exchanges with other minors or that he is a pedophile, his professed ambivalence towards the Minor Victim's age is belied by the defendant's own statements to the court-appointed evaluator during his evaluation. Weiner acknowledged that the age of the victim did matter to him ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Report of Dr. Shoshanna Must, at 7. Moreover, the defendant has acknowledged an interest in legal, adult, teen-themed pornography. (PSR ¶¶ 71-72). In the context of this admitted interest, his insistence

6

that he deserves a lighter sentence because the Minor Victim's age meant nothing to him rings hollow. Even if the Court were to credit Weiner's claim of ambivalence to the Minor Victim's age, that purported ambivalence is part of the problem. That his victim was a minor – and therefore his conduct a serious crime – did not deter Weiner from forging ahead.

The defendant's submission repeatedly makes note of the 15-year-old Minor Victim's various motives for communicating with Weiner and her profit from sharing those communications with the media. While careful not to cast blame on the Minor Victim outright or disclaim ultimate responsibility for his crime, he relies, in part, on the circumstances of their communications in arguing for a sentence of probation. That argument should be rejected, and Weiner should be sentenced for what he did – not what motived the Minor Victim. Weiner, a grown man, a father, and a former lawmaker, willfully and knowingly asked a 15-year-old girl to display her body and engage in sexually explicit conduct for him online. Such conduct warrants a meaningful sentence of incarceration.

### B. A Custodial Sentence Is Necessary to Achieve Specific and General Deterrence, and to Promote Respect for the Law

While the defendant's widely-reported prior scandals were not criminal in nature and did not involve minors, they are relevant for what they reveal about the Court's ability to rely on the defendant's claimed enlightenment and post-conduct rehabilitation. On prior occasions, as here, Weiner has followed the same pattern: he initially denied his conduct;[2] he suffered personal and

---

[2] After the September 21, 2016 Daily Mail article was published, the defendant issued a statement claiming he had been the subject of a hoax. *See* September Sept. 22, 2016, *Anthony Weiner says latest sexting claim involving 15-year-old girl is a hoax*, CBS News, *available at* https://www.cbsnews.com/news/anthony-weiner-says-latest-sexting-claim-from-15-year-old-is-a-hoax/ ("While I have provided the Daily Mail with information showing that I have likely been the subject of a hoax, I have no one to blame but me for putting myself in this position."). This is reminiscent of his claim in 2011 that a hacker had taken control of his Twitter account as a prank. *See* Jonathan Allen and Ben Smith, *Lewd Photo Was Hack, Weiner Says*, Politico, May

7

professional consequences; he publicly apologized and claimed reform.[3]  Yet, he has, on multiple occasions, continued to engage in the very conduct he swore off, progressing from that which is self-destructive to that which is also destructive to a teenage girl – a minor the law recognizes as needing protection.  Weiner's demonstrated history of professed, yet failed, reform make it difficult to rely on his present claim of self-awareness and transformation.[4]  On this record, a custodial sentence is necessary to truly effect specific deterrence and prevent the defendant from committing this crime in the future.

The defendant's experience as a legislator bears noting on this point.  While whatever good deeds the defendant has performed as a public servant or otherwise should, of course, be taken into account at sentencing, (*see* Def. Mem. at 7-11), the very legislation he supported while in office reveals a keen awareness of the risk of sexual exploitation via the Internet that today's minors face daily.  In January 2007, the defendant co-sponsored the Keeping the Internet Devoid of Sexual Predators ("KIDS") Act of 2007, a bill to require sex offenders to register their email and instant message addresses with the National Sex Offender Registry.[5]  In public remarks in support of the bill, the defendant recognized that "the Internet is the predator's venue of choice

---

28, 2011, *available at* http://www.politico.com/story/2011/05/lewd-photo-was-hack-weiner-says-055877.

[3] In 2011, the defendant's office issued a statement following a public sexting scandal that the defendant was going to "get evaluated and map out of a course of treatment to make himself well." *See* Jonathan Allen and Maggie Haberman, *Weiner seeks 'treatment,' House leave*, The Global Politico, June 13, 2011, *available at* http://www.politico.com/story/2011/06/weiner-seeks-treatment-house-leave-056758.

[4] The Government does not dispute the veracity of the portions of the defense submission that speak to the defendant's sex addiction or efforts towards rehabilitation.  Nevertheless, they must be viewed in light of the defendant's own history, which includes prior efforts in this regard.

[5] See Jan. 30, 2007 Press Release, available at https://web.archive.org/web/20080529035151/http://weiner.house.gov/news_display.aspx?id=585.

today." *Id.* Notwithstanding that he obviously grasped the importance of protecting minors from predatory conduct on the Internet, the defendant readily engaged in extensive, inappropriate communications with the Minor Victim. With that depth of awareness, the fact that the defendant engaged in the instant conduct suggests a dangerous level of denial and lack of self-control warranting a meaningful incarceratory sentence.

As Weiner knew full well, the law unequivocally prohibits the online sexual exploitation of minors, no matter the app used to commit the crime or the apparent sophistication or motivation of the young teenager on the other end. The law must be respected to protect other teens from falling prey to the same conduct. The non-custodial sentence that the defendant requests would undercut this principle. A sentence within the range of 21 to 27 months would, by contrast, promote respect for the law and serve as a deterrent to others who are considering a path similar to that trodden by the defendant.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that a sentence of imprisonment of 21 to 27 months is fair, appropriate, and necessary.

Dated:  New York, New York
         September 20, 2017

                                           Respectfully submitted,

                                           JOON H. KIM
                                           Acting United States Attorney

                                    By:    _____
                                           Amanda Kramer
                                           Stephanie Lake
                                           Assistant United States Attorneys
                                           Southern District of New York
                                           (212) 637-2478/1066

cc:    Arlo Devlin-Brown, Esq.
       Erin Monju, Esq.

10